# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAMELA HOLLIST,<br><br>    Plaintiff,<br><br>    v.<br><br>MADISON COUNTY, a political subdivision of the state of Idaho, and ROY KLINGLER, in his individual and official capacity,<br><br>    Defendants. | Case No. 4:13-cv-00139-BLW<br><br>MEMORANDUM DECISION AND ORDER |

Before the Court are Plaintiff Pamela Hollist's: (1) Motion for Clarification/ Reconsideration (Dkt. 39), and (2) Motion to Supplement the Record (34). For the reasons set forth below, the Court will grant in part and deny in part Hollist's Motion for Clarification/Reconsideration. The Court finds moot Hollist's Motion to Supplement the Record.

To clarify, Hollist's motion for partial summary judgment should have been granted in part and denied in part rather than simply denied because the Court found that

she had a property interest in continued employment. As a further point of clarification, the Court notes that Hollist's due process claims against Madison County and Sheriff Klinger in his official and individual capacity survived summary judgment. With respect to Hollist's wrongful termination claim, the Court clarifies that it found in its original decision that Hollist did not have an implied employment contract with Madison County, which limited the at-will employment relationship. The Court, however, has reconsidered this decision and now finds that issues of fact exist on this issue. Finally, the Court finds it improperly dismissed Hollist's freedom of association claim against the County and Sheriff Klinger in his official capacity. However, the Court concludes that it properly dismissed that claim against Sheriff Klinger in his individual capacity.

1. **Hollist's Motion for Partial Summary Judgment**

Hollist seeks to obtain clarification of the Court's decision on her own Motion for Partial Summary Judgment. In moving for partial summary judgment, Hollist asked the Court to determine whether "(1) [Hollist] had a property interest in her employment with Madison County, and (2) [Hollist] was not an at-will employee, but had a contract that she could only be fired for cause." Dkt. 25-1, p. 5. The Court found that "Hollist's employment with Madison County was not contractual," *Memorandum Decision and Order*, p. 10, but then found that she did have a property interest in continued employment, *id.* at 15-16. So Hollist is correct – the Court should have granted in part her motion for partial summary judgment rather than deny it in full.

## 2. Due Process Claim

Even though the Court mistakenly said that Hollist had not specifically alleged a due process claim, it nevertheless analyzed the claim because it had been fully briefed by the parties. As Hollist notes, the Court found that Hollist had raised triable issues of fact on her due process claim against both the County and Sheriff Klinger in his individual capacity. *Memorandum Decision and Order,* p. 27-28, Dkt. 37. Thus, to clarify, Hollist's due process claim against both the County and Sheriff Klinger in his individual capacity survived summary judgment.

## 3. Wrongful Termination

Hollist also seeks clarification regarding the Court's ruling on her wrongful termination claim. The Court understands why Hollist was confused. The Court buried its discussion of whether Hollist's employment was at-will within its discussion about whether Hollist had a property interest in continued employment, and it never directly addressed her wrongful termination claim. However, as noted above, the Court found that Hollist did not have an employment contract that only allowed her to be fired for cause. And without a contract, Hollist's wrongful termination claim could not survive.

However, upon further reflection, the Court has reconsidered its decision finding no contract. The Madison County Personnel Policy manual contains several provisions that bear on this issue. First, the Policy Manual contains a disclaimer regarding the creation of a contract of employment:

THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH MADISON COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.

New employees were subject to a one-year introductory period, during which "either the employee or Madison County may end the employment relationship at will, with or without cause or advance notice." *Pls' SOF* ¶ 11, Ex. 10, p. 3, Dkt. 25-2. Otherwise, the Policy Manual, under the heading "CLASSIFYING EMPLOYEES FOR POLICY PURPOSES," classified employees and defined their status as follows:

> 1. Employment Status:
>
> Except as otherwise provided in this paragraph, **employees of Madison County will not be suspended without pay, demoted with an accompanying change in pay, or discharged from their positions except for cause related to performance of their job duties or other violations of this policy.** Cause shall be determined by the employee's supervisor/elected official and shall be communicated in writing to the employee when employee status is changed.
>
> [. . .]
>
> Only suspension without pay, demotion with change of pay, or discharge for cause shall be subject to the appeal procedure set forth in this personnel policy. The appeal procedure is to be construed in a directory [sic] manner. It is the duty of the appellant to show by clear and convincing evidence that the factual basis for the personnel action is incorrect or that the reasons for the personnel action are contrary to the public interest or violate existing law. Should the appellant establish such basis, the employee's back wages and benefits shall be restored as if the specified action had not been taken.
>
> [. . .]
>
> 3. Significance of Employee Classification

> The procedures for hiring, promotion, and transfer of full-time employees shall be subject to the provisions of this policy. Personnel actions concerning part-time or casual employees are not subject to guidelines set forth herein unless the handbook provisions expressly provi [sic] be terminated without cause at any time, and terminates automatically when the appointing officer leaves office.
>
> 4. Senior or Chief Deputy
>
> The elected or appointed county sheriff, clerk, treasurer, assessor, coroner, and prosecuting attorney are each allowed/required by Idaho Code, Section 31-2006 to appoint one senior or chief deputy. **The appointment as a chief deputy is primarily a political appointment, which appointment is wholly at will, and may be terminated without cause at any time and terminates automatically when the appointing officer leaves office. . . .**

Hollist never signed any acknowledgement stating that she was an at-will employee, and the Policy Manual contained no provision stating that employees like Hollist were at-will. To the contrary, at time she was hired, Hollist signed a "Conditional Offer of Employment," in which she acknowledged that she was a probationary employee for one year and could be fired without cause only during that year:

> • "Within a year of your employment date, you are a probationary employee and the Sheriff can terminate your employment without cause."
>
> • "I understand and agree the Sheriff can terminate me, without cause, from my position, within a year from my official employment date."

*Casperson Aff.* ¶ 5, Ex. D. Both Hollist and Sheriff Klinger signed this Conditional Offer of Employment. *Id.*

In Idaho, employment is at-will unless an employee is hired pursuant to a contract that specifies the duration of employment or limits the reasons for which an employee may be discharged. *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 387 (Idaho 2005).

Thus, in the absence of an agreement limiting an employer's right to terminate the employment relationship, the employer may terminate it at any time or for any reason. *See Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (Idaho 1994).

As the Court stated in its previous decision, an employee manual cannot constitute an element of an employment contract if the manual "specifically negates any intention on the part of the employer to have it become a part of the employment contract." *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 712-713 (1994). Here, it is undisputed that Madison County's Policy Manual contained a disclaimer negating any intention to have it become part of the contract.

But this disclaimer should not have ended the Court's inquiry regarding the existence of a contract. "A limitation may be implied if, from ***all*** the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship-at-will had been limited by the implied-in-fact agreement of the parties." *Ray v. Nampa School Dist. No. 131*, 814 P.2d 17, 20 (Idaho 1991)(emphasis added). In other words, the Policy Manual disclaimer, alone, did not preserve the at-will status of Hollist's employment as a matter of law. Instead, *all* the circumstances surrounding the employment relationship must be examined to determine the existence of an implied limitation.

In this case, Hollist and Sherriff Klinger signed a ***separate*** Conditional Offer of Employment acknowledging that her employment was at-will for one year. After that

one-year introductory period, there is no mention of full-time Madison County employees retaining their at-will status. To the contrary, employees are told that Valley County's policy requires "cause related to performance of their job duties or other violations of this policy" before an adverse employment action may be taken against an employee. By contrast, the Policy Manual specifically states that part-time and casual employees, as well as chief deputies appointed by the county sheriff, the clerk, the treasurer, the assessor, the coroner, and the prosecuting attorney, retain their at-will status at all times.

A reasonable juror could conclude, based on the executed Conditional Offer of Employment, as well as the other circumstances surrounding the employment relationship, that Hollist's employment could be terminated at any time and for any reason during the introductory period, but after that her employment could be terminated only for cause. While the Court does not find, as a matter of law, that an implied for-cause termination contract exists, it does find questions of material fact exist on this issue. Accordingly, Hollist's wrongful termination claim survives summary judgment.

### 4. Motion to Supplement the Record

The Court did not consider the additional evidence that Hollist sought to submit on summary judgment. Thus, in the context of the motions for summary judgment, Hollist's motion to supplement the record is moot. However, given the information the Court currently has about the evidence, the Court would be inclined to allow its admission at trial. As noted above, a jury may look to *all* the facts and circumstances surrounding the employment relationship to determine whether a for-cause termination contract exists.

Therefore, the supplemental evidence Hollist seeks to admit in support of her summary-judgment motion may be relevant. This is not a definitive ruling of the Court, however. The Court will consider this issue in more detail at trial.

**5. Freedom of Association Claim**

Hollist asks the Court to reconsider its decision dismissing her freedom of association claim.

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and

reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988).

Reconsideration of a court's prior ruling under Federal Rule of Civil Procedure 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citation omitted). If the motion to reconsider does not fall within one of these three categories, it must be denied.

After carefully considering Hollist's motion to reconsider, the Court concludes that it incorrectly dismissed her freedom of association claim. As explained below, the Court concludes that: (1) both Madison County and Sheriff Klinger in his official capacity are liable for any alleged violation of Hollist's freedom of association rights under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978) because a County "policy" caused the alleged injury; and (2) Sheriff Klinger has qualified immunity for the claim against him in his individual capacity.

Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents. *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). Consistent with the absence of vicarious liability, a municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees. *Id.* Instead, in order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that a municipal policy or

custom was the "moving force" behind the injury alleged. *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997).

The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation, however. *Id.* at 691. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. *Id.*

In addition, *Monell* liability may attach to a single decision of a municipal official if that municipal officer is "responsible under state law for making policy *in that area* of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123(1988). Under this last theory, a person authorized to commit the county to a course of action necessarily sets its policy; on this view, the course of action *is* the policy.

Here, the Court concluded that the only identified written policy – "Conflicting Relationship Policy No. 1050.2(e) ("Policy 1050") – passes constitutional muster. It stands by that decision. Because Policy 1050 is constitutional, its proper enforcement could not have caused a constitutional deprivation.

But Hollist does not argue that the Court erred in finding Policy 1050 constitutional. Nor does she argue that a custom having the force of law caused her constitutional injury. Rather, Hollist argues that Policy 1050 did not prohibit her relationship with Little, and therefore the County cannot rely on that Policy to defend its

**MEMORANDUM DECISION AND ORDER - 10**

violation of her freedom of association rights. In this view, Policy 1050 is irrelevant, and it is Sheriff Klinger's decision, as a final policymaker, which becomes the County's policy under *Monell* and *Praprotnik*.

The Court agrees with Hollist's argument that her relationship with Little did not violate Policy 1050. The Policy prohibits an employee from knowingly commencing or maintaining a relationship "with any person who is under criminal investigation, indictment, arrest, or incarceration by this or another law enforcement agency, and/or who has an open and notorious criminal reputation in the community (for example, persons whom they know, should know, or have reason to believe are involved in felonious activity)." *Sheriff's Manual* at § 1052(e), Dkt. 24-8. Little was not under criminal investigation, indictment, arrest or incarceration at the time his relationship with Hollist commenced. Nor is there any evidence in the record that Sheriff Klinger reasonably believed that he had an open and notorious criminal reputation in the local community or was engaged in some felonious activity. Simply stated, the Policy did not apply to Hollist's relationship with Little.

However, Sheriff Klinger's course of action with regard to Hollist becomes County policy only if he possessed final policymaking authority with regard to employment policies and practices for the Sheriff's Office. If that is the case, then his single decision to move for Hollist's termination *was* the County's "policy."

The record establishes that Sheriff Klinger had final policymaking authority within the Sheriff's Office for employment decisions generally and in developing and enforcing

a specific conflicting relationships policy. In his deposition, Sheriff Klinger acknowledged that as sheriff, he made all decisions regarding termination of Sheriff's Office employees and did not have to obtain approval from the country commissioners. *Klinger Dep.* 35:21-36:1, Dkt. 24-11. More specifically, Sheriff Klinger also confirmed that although others had input in developing his office's policies and procedures, the final decision was "ultimately on his shoulders." *Id.* at 37:2-38:13. The only limitation on this authority is that the policies and procedures that he adopted for the Sheriff's Office could not conflict with the general policies adopted by the County Commissioners. *Id.* at 41:3-8. The conflicting relationships policy embodied in Policy 1050 was unique to the Sheriff's Office and the County has not suggested that it conflicted in any way with the County's general policies.

Based upon the record before it, the Court concludes that Sheriff Klinger had final policymaking authority for adopting and implementing the conflicting relationships policies for the Madison County Sheriff's Office. As such, Sheriff's Klinger's actions in dealing with Ms. Hollist became the County's policy under *Monell* and *Praprotnik*. That policy was the "moving force" behind the injury suffered, so the County may properly be held liable for those injuries. *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997). The Court will therefore grant the Plaintiff's motion for reconsideration with regard to the freedom of association claims against the County and against Sheriff Klinger in his official capacity.

Whether Sheriff Klinger is also liable in his personal capacity raises a different set of questions, related to his qualified immunity. To determine whether an individual official is entitled to qualified immunity, the Court asks (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). With regard to the first inquiry, at least one district court sitting in the Ninth Circuit has held that a policy prohibiting relationships between a county jail employee and an ex-felon violates the First Amendment right to freedom of association. *Reuter v. Skipper*, 832 F.Supp. 1420, 1424 (D.Or. 1993).

But the possibility that Sheriff Klinger violated Hollist's constitutional rights does not need to be examined to resolve the qualified immunity issue. Even if Sheriff Klinger violated Hollist's First Amendment right to associate with an ex-inmate of the County jail, that right was not clearly established at the time he did so. Although the general right to intimate association is clearly established, *see Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984), the Court must still determine, in this specific factual context, whether the Sheriff's actions violated a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Reuter* is the only case that appears to deal squarely with a jail guard's right to intimate association with ex-inmates, and a district court case from another jurisdiction does not clearly establish that right. Under these circumstances, it was objectively reasonable for

Sheriff Klinger to issue the notice of termination to Hollist because of her relationship with Little, an ex-inmate of the jail who was still on probation.

Because Sheriff Klinger has qualified immunity, the Court properly dismissed Hollist's freedom of association claim against Sheriff Klinger in his individual capacity.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff Pamela Hollist's Motion for Clarification/ Reconsideration (Dkt. 39) is GRANTED in part and DENIED in part in accordance with this decision.

2. Plaintiff Pamela Hollist's Motion to Supplement the Record (34) is MOOT.

DATED: February 19, 2015

B. Lynn Winmill
Chief Judge
United States District Court